# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WALTER SINGER, | : | Bankruptcy No. 06-16032DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court are the (1) Motion of Commerce Bank N.A. ("Commerce") for Relief from the Automatic Stays Pursuant to 11 U.S.C. § 362 and 11 U.S.C. § 1301 to Allow Repossession and Sale of Motor Vehicle and, in the Alternative, For Adequate Protection Pursuant to 11 U.S.C. § 1326(a)(1)(C) (the "Stay Motion") and (2) that part of the Motion for Equitable Relief to Recover Repossessed Motor Vehicle and for Damages (the "Turnover Motion") not addressed in my Order dated January 10, 2007 requiring turnover of a 2002 Ford Explorer (the "Vehicle") which Commerce had repossessed prepetition. Hearings were held on February 9, 2007 and March 8, 2007.  Except for the value of the Vehicle, the facts, such as has been presented to the Court, are not disputed. The focus of the Stay Motion is whether the adequate protection the Debtor has purported

to provide to Commerce is sufficient under § 1326(a)(1)(C), a new provision of the Bankruptcy Code added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA"). The focus of the Turnover Motion is whether Commerce's post-petition retention of the Vehicle was a willful violation of the automatic stay and if so, what damages, if any, the Debtor is entitled to.

**BACKGROUND**

On September 30, 2004 Debtor and his wife Sybil Singer ("Sybil") executed a promissory note (the "Note") in the principal amount of $11,545.00, secured by the Vehicle which was purchased with the Note proceeds. Exhibits M-1 and M-2. Pursuant to the Note, which matures September 30, 2007, Debtor and Sybil were obligated to make thirty-six monthly payments of $355.10.[1] On December 5, 2006 Commerce repossessed the Vehicle based on their failure to make two monthly installments under the Note. Debtor filed this Chapter 13 case, his second, on December 21, 2006.[2] Immediately thereafter he filed the

---

[1] The Vehicle is titled in the name of Debtor alone.

[2] Debtor's prior case was filed on September 6, 2005 under Chapter 7, and Debtor received a discharge on January 3, 2006. Case no. 05-31859. Commerce's lien survived the Debtor's discharge. I shall take judicial notice of the docket entries in this case and the prior bankruptcy case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). Moreover I may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (continued...)

Turnover Motion which was granted in part at an expedited hearing held on January 11, 2007.[3] Having found that the Vehicle was properly insured, I ordered that the Vehicle be returned.[4] I also set a hearing on full notice for March 8, 2007 to determine whether Debtor's request for damages under § 362(k) for willful violation of the stay was warranted, and if so, in what amount.

Prior to the March 8 hearing, Commerce filed the Stay Motion contending that Debtor had failed to make post-petition payments.[5] It stated that it was without adequate protection as there was no equity in the Vehicle and Debtor had failed to provide the adequate protection payments required by § 1326(a)(1)(C). Commerce subsequently acknowledged that there is equity in the Vehicle, albeit eroding with the passage of time. The amount of the equity is in dispute. Debtor admits making no post-petition payments to Commerce, contending that he has no obligation to do so given the equity in the Vehicle. Rather he relies on his Chapter 13 plan to satisfy Commerce's secured claim.

---

(...continued)
(1972 proposed rules)).

[3] The Order which was entered from the bench after a ten minute hearing at which Commerce's counsel who had just been retained appeared by telephone, was erroneously dated January 10 instead of January 11, 2007.

[4] As Commerce made no argument that the Debtor had no redemption rights, that issue is not implicated here. Compare General Motors Acceptance Corp. v. Morgan (In re Morgan), 23 B.R. 700, 702 (Bankr. E.D. Pa.1982) (because debtor filed Chapter 13 petition during period in which he could exercise his right of redemption, that right was property of the estate as of date of filing or petition) with Weiser v. Pennsylvania Nat'l Bank (In re Weiser), 44 B.R. 224, 225 (Bankr. M.D. Pa. 1984) (petition to redeem filed subsequent to redemption period so car was not property of the estate under § 541).

[5] It also averred that Debtor failed to provide updated evidence of insurance, an allegation it has withdrawn as inaccurate.

Commerce has filed a secured proof of claim in the amount of $6,465.11.[6] Debtor has not filed an objection to the claim as of this date.[7] Nonetheless, Debtor's Chapter 13 plan provides for a total payment to Commerce in the amount of $4,695.02. Doc. No. 17. Pursuant to that proposed plan, Debtor is to make monthly payments of $85 for sixty months. Commerce has objected to the proposed plan which has not been scheduled for confirmation presumably because Debtor failed to appear at his § 341 hearing. The Chapter 13 trustee filed a motion to dismiss this case because of that failure as well as the failure to provide required tax documentation. After a hearing held on the motion, Debtor was given another opportunity to appear but was directed to substantiate his contention that he was exempt from filing tax returns and to file an amended plan consistent with the Bankruptcy Code and/or file objections to proofs of claim.[8]

At the March 8 hearing, Debtor's counsel handed up a bill prepared March 7, 2008 asserting legal charges of $3,122.25 incurred by Debtor in connection with the services of McCullough & Eisenberg, P.C. ("M&E") in this matter.[9] Commerce's counsel had seen it

---

[6] In addition to the principal, interest and late fees related to the Note, there is a repossession fee of $400 and a storage charge of $1,330. The storage charge is disputed. While Commerce did not make its proof of claim part of the record, its representative testified as to the claim and I take judicial notice that it has been filed in the public record of this Court on February 8, 2007. See Claims Register, case no. 06-16032.

[7] The proposed plan attempts to shift the burden to the secured creditor to establish charges and costs by requiring that the creditor seek their allowance absent which they will be deemed discharged. This is contrary to the law of this Circuit.

[8] The claims register reflects a secured claim of $775.80 and a priority claim of $617.90 filed by the Commonwealth of Pennsylvania. Debtor's mortgagee also filed a proof of claim asserting a claim for arrears of $193.88. The bar date for proofs of claim has not yet been reached.

[9] The bill was actually for $3,522.25 but contained an error in using a $525/hour, versus
(continued...)

-4-

for the first time that morning and objected to the fee as being unreasonable.  To allow Commerce adequate time to examine the invoice and in light of the pending Stay Motion, I continued the hearing until March 23, 2007 to take any testimony required to support the parties' positions.

At the continued hearing Commerce presented the testimony of Arthur Brosius ("Brosius"), its Assistant Vice President and Collections Supervisor who has knowledge of the Debtor's car loan.  He relayed that after the repossession on December 5, he was contacted by Eisenberg who claimed that Commerce was incorrect about the payment arrears. After researching bank records, Brosius confirmed to Eisenberg that Commerce was correct and Eisenberg concurred.  Four or five days later he was contacted by McCullough and advised that Debtor had filed a petition under Chapter 13.  His records do not pinpoint the date of the contact but the petition was filed on December 21.[10]  Commerce admits that several demands were made on it post-petition but makes a point that the Chapter 13 plan had not yet been filed.  Commerce appears to believe that the filing of the Chapter 13 plan which recognized its secured claim, not the petition, triggered its obligation with respect to estate property.  Respondent Commerce Bank's Memorandum of Law in Opposition to the Turnover Motion at 2.  Commerce was reviewing its plan of action with the attorney it retained when the January 11 Order was entered with which it promptly complied.

---

(...continued)
$325/hour charge as to two entries.  The invoice was not marked as an exhibit to the 3/8 hearing. For reference, I have directed the ESR operator to mark it *nunc pro tunc* as Exhibit D-1A.

[10]  A facsimile transfer of the petition dated December 21, 2007 was attached as Exhibit C to the Turnover Motion but not moved into the record.  As there does not seem to be any question but that Commerce knew of the filing, Debtor is not prejudiced by its counsel's oversight.

In addition to the post-bankruptcy circumstances relating to the repossession, Brosius testified that Commerce views the value of the Vehicle to be $8,075 based on the NADA pricing information for a "clean trade-in" of this model with 80,000 miles on it. Exhibit M-3. Brosius testified that the mileage was obtained from the records of the Vehicle upon repossession but neither offered nor was asked why he used the "clean trade-in" versus the "clean retail" values also quoted by NADA.[11] On cross examination Eisenberg showed Brosius another NADA print out for the Vehicle but with different assumptions. Eisenberg's document, which assumed 30,000 miles on the car, provided a clean trade-in value of $9,875 and a clean retail value of $12,000. Exhibit D-1. Notably Debtor was not called to testify as to the value of the Vehicle, including the actual miles on the Vehicle.

## I.

Upon the filing of the petition, the Vehicle became property of the estate pursuant to 11 U.S.C. § 541, notwithstanding Commerce's prepetition repossession of the Vehicle. As noted by the United States Supreme Court in U.S. v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309 (1983):

> [Section] 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.
>
> Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under

---

[11] NADA explains that the Clean Trade-in is a national average calculated from the Official Used Car Guide's ten region and may be higher or lower than the national average due to local market conditions. This qualification does not appear with respect to the Clean Retail Value. The latter notes that it may include a limited warranty and a current safety and/or emission inspection. Brosius was not questioned about these distinctions and their applicability to these facts.

> § 363 to turn that property over to the trustee. Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings.
>
> . . . In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.

Id. at 205-07, 103 S.Ct. 2309 (internal citations and footnotes omitted).[12] Commerce repossessed the Vehicle before the Chapter 13 petition, but had not disposed of the car. In Whiting Pools, the IRS seized the debtor's property pursuant to a tax levy before the petition but had not sold the property. Whiting Pools therefore makes clear that the right to possess the Vehicle became property of this Debtor's Chapter 13 estate.

11 U.S.C. § 362(a)(3) prohibits, *inter alia*, the "the exercise [of] control over property of the estate." There is ample support in the case law that retention of property lawfully seized prepetition may constitute a stay violation. See Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989) ("[T]he duty [to turn over property of the estate] arises upon the filing of the bankruptcy petition. The failure to fulfill this duty,

---

[12] I recognize that the Supreme Court limited the application of its holding to chapter 11 cases. 462 U.S. at 208 n. 17, 103 S.Ct. 2309 ("Our analysis in this case depends in part on the reorganization context in which the turnover is sought. We express no view on the issue whether § 542(a) has the same broad effect in ... adjustment of debt proceedings."). However, numerous courts have since recognized that there is no meaningful distinction between chapter 11 and chapter 13 cases insofar as the Whiting Pools holding is concerned and have applied its analysis to chapter 13 cases.   See, e.g. Tidewater Finance Co. v. Moffett (In re Moffett), 356 F.3d 518 (4th Cir.2004); Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1285 (11th Cir.1998); Nat'l City Bank v. Elliott (In re Elliott), 214 B.R. 148, 151-52 (6th Cir. BAP 1997) ; In re Attinello, 38 B.R. 609 (Bankr. E.D. Pa. 1984).

regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."); In re Yates, 332 B.R. 1, 4-5 (BAP 10th Cir. 2005) ( creditor's postpetition retention of motor vehicle which it had lawfully repossessed from debtors prepetition constituted an "exercise of control" over property of the estate and violated automatic stay); In re Sharon, 234 B.R. 676, 682 (BAP 6th Cir. 1999) (Creditor's failure to return prepetition seized automobile upon debtor's demand was the essence of "exercising control" under 362(a)(3)); GMAC v. Ryan, 183 B.R. 288, 289 (M.D. Fla.1995) ("A creditor's failure to voluntarily turn over property taken lawfully prepetition, when so requested by the debtor postpetition, is a violation of the automatic stay."); Abrams v. Southwest Leasing & Rental Inc. (In re Abrams), 127 B.R. 239, 241-43 (9th Cir. BAP 1991) (failure to return repossessed car after receiving notice of bankruptcy filing constituted a violation of the automatic stay); In re Brown, 2003 WL 21402570, *3 (Bankr. E.D. Ark. 2003) (same); In re Cepero, 226 B.R. 595, 598 (Bankr. S.D. Ohio 1998) ("Despite the lawful prepetition repossession, [creditor] violated the automatic stay of § 362(a)(3) by maintaining possession of the [vehicle] after receiving notice of the bankruptcy filing."). There is no question that Commerce's actions in retaining the Vehicle after the bankruptcy petition was filed constituted a violation of the stay.

I acknowledge the decisions cited by Commerce for the proposition that a secured creditor may condition turnover of estate property upon a debtor first providing adequate protection. See In re Nash, 228 B.R. 669, 673-74 (Bankr. N.D. Ill. 1999); In re Fitch, 217 B.R. 286, 290-91 (Bankr. S.D. Ca. 1998); In re Massey, 210 B.R. 693, 696 (Bankr. D. Md. 1997); In re Deiss, 166 B.R. 92, 94 (Bankr. S. D. Tex. 1994); In re Richardson, 135 B.R. 256,

260 (Bankr. E.D. Tex.1992); <u>In re Brown</u>, 210 B.R. 878, 883 (Bankr.S.D. Ga. 1997). I agree that a creditor may respond to a notice of bankruptcy by immediately seeking adequate protection from the court in connection with estate property it must return. For example, if the creditor establishes that the car is uninsured, it can ask the court to condition return on the provision of adequate insurance. However, these are not the facts of this case. Here a hearing was held on notice to Commerce whose counsel appeared by telephone and advised me simply that he had counseled Commerce on the issue and it was considering its course of action. Notably Commerce did not seek leave of court to retain the Vehicle subject to the provision of adequate protection. Moreover, only after I *sua sponte* established that the Vehicle was insured, the most basic requirement of adequate protection of an automobile, did I order it returned. While Commerce subsequently sought relief from stay to secure adequate protection payments or recover the Vehicle, <u>see</u> <u>supra</u> II, those payments were not yet due as of the January 11 hearing. Thus, Commerce was provided with all the protection that it was due at the time I ordered it to return the Vehicle.

The proper balance between the cases cited by Commerce and the contrary view that § 542(a) in stating that a party holding property of the debtor's estate "shall" deliver the property to the debtor or trustee, does not condition turnover upon a debtor providing adequate protection is suggested by <u>Whiting Pool</u>. As the Supreme Court noted, while a secured creditor certainly has a right to adequate protection, the onus is upon the creditor to "seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to

reorganize." Whiting Pools 462 U.S. at 211-12; 103 S.Ct. at 2317. See also In re Del Mission Ltd., 98 F.3d 1147, (9th Cir. 1996) ("To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor."). Having found that the stay was violated by the refusal to return the vehicle, I must consider whether that act was a willful violation.

Section 362(k) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section [i.e., section 362] shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Accordingly, Commerce will be liable for damages if I find its actions in violation of the stay to be willful. Willfulness in the context of a stay violation has been interpreted by the Third Circuit Court of Appeals to mean "an intentional or deliberate act done with knowledge that the act is in violation of the stay." Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Development Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

> A 'willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

Id. *(quoting* In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)). The uncontroverted evidence is that Commerce knew of the Debtor's pending bankruptcy case as his attorneys sent a copy of the petition and followed up with demands for the return of the Vehicle. Commerce's erroneous belief that it had no obligation to return the Vehicle until it received adequate

-10-

protection payments or a Chapter 13 plan was filed does not mitigate the willfulness of its conduct.[13] 901 F.2d at 329. ("Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded"). Because I find Commerce to have acted willfully, I turn next to Debtor's request for damages.

The sole damage claimed by Debtor is for reimbursement of his attorneys' fees for recovering the Vehicle,[14] i.e., M & E's legal charges of $3,122.25, I agree with Commerce that the bill is an unreasonable measure of damages incurred as a result of Commerce's conduct. While M&E properly omitted certain charges for services it performed to demand return of the Vehicle after the filing, it has still included charges that do not arise from the stay violation. On January 11, 2007, I entered an Order granting Debtor's expedited motion to recover the Vehicle. It was returned the next day. Debtor is entitled to be reimbursed for his counsel's cost to secure that relief. I will allow the charges for 12/26, 12/28, 1/5, 1/9 and 1/11 as itemized in the footnote below which in the aggregate support a claim for damages of $1,600.[15] While M&E may charge Debtor for the other services in its invoice, I do not find that they are a result of the stay violation but rather relate to the dispute between

---

[13] Whether Commerce is entitled to adequate protection payments going forward pursuant to § 1326(a)(1)(C) is a separate issue that I will address below. In any case, payments under § 1326(a)(1) are required not later than 30 days after the date of the filing of the plan or order for relief. Debtor's first payment under subsection (C) was not due until January 21, 2007.

[14] Debtor neither sought nor do I find appropriate punitive damages in this case.

[15] 12/28- .2 ($65); 1/5- 2.8 ($910); 1/11- 1.0 ($325); 1/11 ($300 travel).

Debtor and Commerce as to relief from stay and the requirement of adequate protection payments in this case.[16]

## II.

While I do not agree with Commerce that adequate protection payments in this case were a prerequisite to the return of the Vehicle, I concur that § 1326(a)(1)(C) requires post-petition, pre-confirmation payments to Commerce unless the court orders otherwise. That section provides, in pertinent part:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
>
> (A) proposed by the plan to the trustee;
>
> ...
>
> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

---

[16] For that reason, I have not charged the preparation and attendance at the 3/8 hearing against Commerce that had already returned the Vehicle. The issues that were addressed at that hearing and the one that followed on 3/27 do not relate to turnover. Nor for the most part do the Admissions propounded by Commerce which M&E reviewed and forwarded to the Debtor. The damages issue which was nominally the subject of the 3/8 hearing was addressed by counsel handing up an invoice which he had just provided to Commerce's lawyer. A hearing was not necessary for that to occur. As far as counsel's time for assisting Debtor in securing the return of the Vehicle, that time on 1/11 would have had to have been incurred even if the stay were not violated since Commerce legally repossessed the Vehicle. Finally since I did not charge against Commerce any of the time after the 1/11 hearing, I did not charge against M&E the 1-1/2 hours that Commerce and its counsel waited for Mr. Eisenberg to appear for the scheduled hearing.

11 U.S.C. § 1326(a)(1). Because this is a new statutory provision, there are many unanswered questions about the application of this perplexing section. As noted by Judge Lundin:

> Use of the phrase "adequate protection" to describe the required pre-confirmation payment to an allowed purchase money lienholder is confusing. Adequate protection is statutory term of art described in § 361 as an entitlement measured against the decrease in value of an interest in property that results when an automatic stay prevents a creditor from realizing on its collateral . . . Adequate protection of the portion of an obligation that becomes due after the petition is a contradictory formulation leaving much unanswered.

Lundin, Chapter 13 Bankruptcy § 404.1, 3d Ed (2000 & Supp 2006). See also, D. Carlson, Cars and Homes in Chapter 13 after the 2005 Amendments to the Bankruptcy Code, 14 ABI L.Rev. 301 (2006). Legislative history on this provision is lacking. However, at least one court has viewed the amendment to be consistent with Congress's intent to prevent perceived abuses of the bankruptcy laws, one such abuse being where a debtor retains a vehicle for months pending confirmation without payment. The provision to require post-petition payment would ameliorate the prejudice to a lender that arises when a case is dismissed before confirmation and no funds are distributed to the creditor whose collateral has diminished in value during the post-petition, pre-confirmation period. Drive Financial Services v. Brown (In re Brown), 348 B.R. 583, 591 (Bankr. N.D. Ga. 2006).

A small body of decisional law interpreting § 1326(a)(1)(C) has evolved and certain principles are emerging.[17] Adequate protection must be determined for "that portion of the

---

[17] None of the cases adopt Commerce's understanding of the new requirement. Commerce's contention is that § 1326(a)(1)(C) requires adequate protection payments equal to the difference between Debtor's monthly loan payment $355.10 and the amount Debtor is paying to the Chapter 13 trustee ($85). Its interpretation finds no support in the words of the statute. The only subtraction
(continued...)

obligation that becomes due after the order for relief." The statute does not specify how that determination is made. However, it is fair to conclude that the measure of adequate protection during the pre-confirmation period is the amount that the collateral is depreciating. Brown, 348 B.R. at 593. See also Carlson, supra at 320 ("Classically, adequate protection means protection from depreciation of the collateral"). This is consistent with the United States Supreme Court's decision in United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 108 S.Ct. 626 (1988), which held that adequate protection did not include the secured creditor's right to immediate possession or interest.

Once the amount of the adequate protection is determined,[18] the question is in what form it must be provided. Section 1326(a)(1)(C) speaks of payments. Yet courts have shown an inclination to incorporate the definition of adequate protection in § 361 which in addition to periodic cash payments, includes replacement or additional liens and such other relief

---

(...continued)
in § 1326(a)(1) is the deduction of the adequate protection payment from the plan payment to the trustee, presumably because it has been paid directly to the lender. Relaying on the prefatory language in § 1326(a)(1)(C) "unless the court orders otherwise," the statutory provision for payment to the lender has been altered by a number of courts who have ordered the adequate payments to be made to the Chapter 13 trustee for distribution to the lender. Only in that manner, they opine, will the trustee be able to know how much the creditor is entitled to under the plan. In re Hill, 2007 WL 499622 at *4 (Bankr. M.D. N.C. Feb. 12, 2007); Brown, 348 B.R. at 592 and n.6 (*citing* post-BAPCPA general orders of six bankruptcy courts allowing direct adequate protection payments to the Chapter 13 trustee). If the plan is not confirmed, the trustee makes distribution pursuant § 1326(a)(2) to the lender rather than return the payments to the debtor. I am unaware of how adequate protection payments in favor of car lenders are being handled in this jurisdiction.

[18] Indeed to simplify matters and avoid the type of dispute before me, at least one court has adopted a local rule that quantifies adequate protection as 1.5% of the value of the collateral and requires pre-confirmation payments in that amount as presumptively equal to the depreciation of a vehicle. In re DeSardi, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006). In the absence of a rule, other courts have found that a 1% of the collateral's value is an appropriate measure to account for depreciation pending confirmation. In re Hill, 2007 WL 499622 at *4 n.12 (Bankr. M.D. N.C. Feb. 12, 2007); In re Beaver, 337 B.R. 281, 285 (Bankr. E.D. N.C. 2006). Using these benchmarks, the monthly adequate protection amounts would be approximately $100 to $150 per month using the highest value for the Vehicle.

as will result in the "indubitable equivalent" of the interest to be protected. E.g., Brown, 348 B.R. at 591; DeSardi, 340 B.R. at 797; Beaver, 337 B.R. at 284. That an equity cushion alone may provide adequate protection to a secured creditor stayed by a bankruptcy petition is a settled principle in bankruptcy law. E.g., In re Shaw Industries, Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). In Beaver, the Court noted that when Congress intends to change an existing law, it does so clearly. As § 361 does not appear to have been altered by BAPCPA, the Court reasoned that adequate protection in this context could still be provided by a variety of methods, including the status quo when the value of the collateral is sufficient to provide an equity cushion. 337 B.R. at 284.

I believe that in specifying adequate protection payments, Congress intended that payments be provided. However, by prefacing the requirement by the language "unless the court orders otherwise," it also appears that Congress intended to leave open the bankruptcy court's discretion to excuse payments in appropriate circumstances. Beaver, 337 B.R. at 285. I therefore conclude that where there is a significant equity cushion and a relatively small diminution in the value of the collateral during the anticipated pre-confirmation period, an exception to the payment requirement would be warranted.

With these principles in mind, I now address the evidence presented at the hearing. Given the parties' reliance on the published NADA vehicle pricing information, I also take judicial notice of the clean trade-in value quoted for the vehicle as of April 12, 2007 using the same assumptions as used by Commerce: www.nadaguides.com. I compared that value, $7,050, with the $8,075 clean trade-in value quoted in Exhibit M-3 as of March 19, 2007, and conclude that in one month, at least according to NADA, the Vehicle lost $125 of

-15-

trade-in value.[19] This formulation, borne out of the vacuum in the record on the subject, may not be precise but it is helpful to make clear that the depreciation of the Vehicle would not come close to the equity cushion in the Vehicle even if confirmation were postponed for many months more than it will be.[20]

The value of the Vehicle ranges from the clean trade-in value of $8,075 to the clean retail value of $10,200. In this case, it is not necessary to decide which is applicable. With a claim of $6,465, Commerce is clearly over secured on either the clean trade-in or clean retail value. Debtor contends that this equity cushion is sufficient to adequately protect Commerce until confirmation. I agree.

DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge

Dated: April 20, 2007

---

[19] The same analysis can be performed using the clean retail values used by Debtor. While Commerce did not present a complete report including the clean retail value, I can extrapolate the information from Exhibit D-1 for the clean retail value and make the mileage adjustment for 80,000 (versus 30,000) miles to arrive at a clean retail value of $10,200 as of March 26, 2007. The NADA report as of April 12, 2007 shows a value of $10,050 and a decrease of $150. This number is within $25 of the clean trade-in values used by Commerce and closely approximates the amount that would be determined applying the benchmarks used by other courts. See supra, note 18.

[20] A confirmable plan is another form of adequate protection. At this juncture I have made no finding on whether Debtor can propose a confirmable plan but he is given the opportunity to attempt to do so. However, that opportunity is not open ended. Commerce is not forced to wait with its equity eroding while Debtor pursues an infeasible plan . Thus, this case will come to confirmation quickly or Commerce's request for relief will be revisited. To that end, the Debtor has been ordered to file an objection to Commerce's claim and to amend his plan which is underfunded without regard to the objection to Commerce's storage charges. The § 341 meeting has been rescheduled and Debtor has a month to prove that he has no obligation to file tax returns as he contends.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WALTER SINGER, | : | Bankruptcy No. 06-16032DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 20th day of April 2007, upon consideration of (1) Motion of Commerce Bank N.A. ("Commerce") for relief from the Automatic Stays Pursuant to 11 U.S.C. § 362 and 11 U.S.C. § 1301 to Allow Repossession and Sale of Motor Vehicle and in the Alternative, For Adequate Protection Pursuant to 11 U.S.C. § 1326(a)(1)(C) (the "Stay Motion") and (2) the Motion for Equitable Relief to Recover Repossessed Motor Vehicle and for Damages (the "Turnover Motion") to the extent not addressed in my Order dated January 10, 2007, after notice and hearing, and for the reasons stated in the foregoing Memorandum Opinion;

It is hereby **ORDERED** that the Stay Motion is **DENIED**;

It is **further ORDERED** that the Turnover Motion is **GRANTED In Part**. Debtor is entitled to damages in the amount of $1,600 resulting from the violation of the automatic stay by Commerce.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge